# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0177
Filed May 13, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Tianthony Quintez Keller,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Des Moines County,
The Honorable John M. Wright, Judge.

———————————

**AFFIRMED**

———————————

Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, attorney
for appellant.

Brenna Bird, Attorney General, and Martha E. Trout, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Tabor, C.J., Langholz, J., and Vogel, S.J.
Opinion by Langholz, J.

**LANGHOLZ, Judge.**

After watching a car barrel through an intersection as the stoplight turned red, a uniformed deputy sheriff in a marked law-enforcement vehicle pulled behind the car and activated his siren and flashing red-and-blue lights. Yet as the deputy followed the car for over ninety seconds—traveling a mile and through three turns—the car failed to stop. About thirty seconds into the pursuit, the car's emergency hazard lights began flashing. And the car finally stopped only after pulling onto a residential property where the car's driver, Tianthony Keller, lived. After arresting Keller, law-enforcement officers also found marijuana in the car. And Keller was eventually charged with eluding while exceeding the speed limit by twenty-five miles per hour or more—a class "D" felony—and possession of marijuana, first offense—a serious misdemeanor. *See* Iowa Code §§ 321.279(2)(a), 124.401(5)(a)–(b) (2024).

A jury convicted Keller of a lesser-included misdemeanor eluding offense (which did not require proof of Keller's speed), *see* Iowa Code § 321.279(1)(a), and the possession-of-marijuana offense. Keller appeals both convictions. He argues that a prosecutor's statement during jury selection was prosecutorial misconduct entitling him to a new trial on both offenses. And he challenges the sufficiency of the evidence supporting his eluding conviction, claiming that he initially did not see the deputy and then activated his hazard lights to let the deputy know his car had mechanical issues and might not have started again if he had stopped on the side of the road.

Because Keller did not object to the prosecutor's statement, he failed to preserve error on his claim of prosecutorial misconduct. Binding supreme court precedent forecloses his argument that we should adopt the plain-error doctrine and reach that issue anyway. And substantial evidence supports his eluding conviction. We thus affirm Keller's convictions.

2

## I.     Prosecutorial Misconduct

Keller first argues that the prosecutor engaged in prosecutorial misconduct when, at the start of jury selection, the prosecutor told the panel of prospective jurors:

> As the Judge mentioned, this is a fairly short trial. So for those of you who thought you might be coming in here and spending two weeks, O.J. style, no. This will be a relatively short trial.
>
> We do hope to be done by noon tomorrow. There are no guarantees, just that it's the hope.

According to Keller, "mentioning the O.J. Simpson trial immediately prejudice[d] the jury against Mr. Keller" because there were "significant similarities" in the two cases: "Both Mr. Keller and O.J. Simpson are African-American and they were both involved in alleged police pursuits." And Keller contends, the prosecutor thus told "the jury that Mr. Keller should not be found not guilty as O.J. Simpson was."

But as Keller concedes, he did not object to the prosecutor's statement in the district court. His claim of prosecutorial misconduct is thus not preserved for our appellate review. *See State v. Martin*, 877 N.W.2d 859, 865–66 (Iowa 2016) (holding that claims of prosecutorial misconduct during jury selection were not preserved when defense counsel did not object to the statements or raise them as grounds for mistrial in the district court).

Keller argues that we can bypass this error-preservation problem by adopting plain-error review. But the supreme court has repeatedly rejected that argument. *See, e.g.*, *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) ("We have repeatedly rejected plain error review and will not adopt it now."); *Martin*, 877 N.W.2d at 866. And to the extent that he claims his trial counsel was ineffective for failing to object, we cannot consider that claim on direct

appeal either—it must be brought in a postconviction-relief proceeding. *See* Iowa Code § 814.7 (providing that an ineffective-assistance-of-counsel claim "shall not be decided on direct appeal from the criminal proceedings" and "shall be determined by filing an application for postconviction relief pursuant to chapter 822").

## II.   Sufficiency of the Evidence Supporting the Eluding Conviction

Keller also challenges the sufficiency of the evidence supporting his eluding conviction. We review for correction of errors at law. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). We are bound by the jury's verdict "if the verdict is supported by substantial evidence." *Id.* Evidence is substantial when "sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* It matters not whether the evidence is direct or circumstantial. *See State v. Ernst*, 954 N.W.2d 50, 57 (Iowa 2021). And in assessing its sufficiency, we view "the evidence in the light most favorable to the State" and make all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *State v. Brown*, 5 N.W.3d 611, 615–16 (Iowa 2024) (cleaned up).

"The driver of a motor vehicle commits a serious misdemeanor if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked or unmarked official law enforcement vehicle driven by a peace officer after being given a visual and audible signal to stop." Iowa Code § 321.279(1)(a); *see also State v. Amisi*, 997 N.W.2d 683, 693 (Iowa 2023) (rejecting sufficiency-of-the-evidence challenge to eluding conviction). The jury was given instructions that were materially consistent with these statutory elements. Keller argues only that no reasonable jury could find that he willfully failed to stop his vehicle.

At trial, the jury heard evidence that a deputy sheriff was stopped at a red stoplight in Burlington one March 2024 morning. He saw a car driving on the intersecting street speed up as it approached the intersection. And just as the car entered the intersection, the deputy's stoplight turned green as the car continued to race through the intersection.

The deputy turned his marked patrol vehicle left onto the intersecting street to follow the car, activated his lights and sirens, and tried to catch up. There were no other vehicles between him and the car. Although the speed limits ranged between twenty and thirty miles per hour, the deputy paced the car as going as fast as sixty miles per hour based on the deputy's speeds trying to gain on the car.

About half a mile down the street, and roughly thirty seconds into the pursuit, the car's hazard lights began blinking, and the car turned onto another street. The deputy continued to follow. And a little less than half a mile farther, the car turned again onto another street. Shortly after, the car turned into a long driveway, continued past a house, and parked next to a shed. The entire pursuit covered one mile and took roughly ninety seconds. And it was all captured on the deputy's dashcam video, which was played to the jury.

With his gun drawn, the deputy ordered Keller out of his car. Keller eventually complied. Other law-enforcement officers soon arrived to assist in detaining Keller. According to the deputy, Keller explained that "nobody told him to stop" and said something like "our laws don't apply to him." And bodycam video from one of those other officers—which was also played to the jury—showed two minutes of the encounter as Keller was handcuffed and led into the deputy's patrol vehicle. When the officer asked him, "Did you not stop when you were . . .," Keller interrupted, "I wasn't told to stop.

I don't have to stop." Keller continued to argue about his rights being violated and being "falsely imprisoned," and eventually declared, "I am not no motherfucking citizen of your United States-ass corporation." Not once during the two-minute video did Keller mention any other reason for his failure to stop his car.

Keller testified in his own defense at trial. He said that he did not notice the deputy's flashing lights "at first" and explained:

> [O]nce I seen that he was intending to try to stop me, that's when I put on my hazards like, no, dude, it's a hazardous vehicle and you're probably going to try to—probably going to cost me money by pulling me over right now and stopping me and doing whatever you're trying to do with your investigation, which I'm aware of at this point.

According to Keller, his "car was overheating and it was in jeopardy of shutting down," and if he "shut it down on the side of the highway or something, and with the previous conditions it was under, if that antifreeze had been spewing on that battery and [he] attempted to start that car back up, it could have blown up."

Keller also called his father as a witness to describe the car's mechanical issue. According to Keller's father, "the radiator was leaking and it would run hot. So you have to let it cool down so you can pour some more antifreeze." And Keller's father explained that when he drove the car, he would sometimes "try to make it all the way home" without stopping. But if he could not do so, then he'd "turn off on the side street and let it cool off."

On appeal, Keller focuses on his testimony about the reason he chose not to stop when he noticed the deputy trying to pull him over. And he highlights the lack of any radar evidence of speeding and points out that he just drove home "without making evasive maneuvers." He contends that this

shows he did not willfully fail to stop his vehicle. But none of these arguments means the evidence was insufficient to convince a reasonable jury that he willfully failed to stop his vehicle.

For starters, while his arguments about the lack of radar evidence and evasive maneuvers seem likely to have convinced the jury to acquit him of the original felony eluding offense—neither is an element of the lesser-included serious misdemeanor eluding offense that he was actually convicted of. *Contrast* Iowa Code § 321.279(2)(a), *with id.* § 321.279(1)(a). The jury also did not have to believe Keller's testimony about the reasons for his actions—nor is it our place to second-guess its credibility determinations. *See Brown*, 5 N.W.3d at 616. And even accepting Keller's testimony, the jury could have reasonably concluded that it showed that Keller willfully failed to stop when he admittedly became aware that the deputy had given him the signal to stop and he instead chose to keep driving for another sixty seconds because complying with the request might "cost [him] money" due to any mechanical issues with his car.

Bottom line, substantial evidence supports the jury's verdict that Keller is guilty of eluding. We thus affirm both convictions.

**AFFIRMED.**